UNITED STATED DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT

STEVE PARTLO,
          Plaintiff,

                                  Case No. 06-11023
v.                              Judge Avern Cohn

CLARKSTON COMMUNITY SCHOOLS,
CLARKSTON COMMUNITY SCHOOLS
BOARD OF EDUCATION,
CLARKSTON COMMUNITY SCHOOL DISTRICT,
ALBERT ROBERTS, LINDA NESTOR,
BRUCE BEAMER, KEVIN KLING, STEPHEN WEINER,
CARL BLEM, and WES GOODMAN,
in their individual and official capacities,
          Defendants.

_____/

**MEMORANDUM AND ORDER GRANTING DEFENDANTS'
JOINT MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

      This is an employment case under 42 U.S.C. § 1983.  Plaintiff Steve Partlo

(Partlo) claims that the defendants wrongfully terminated him on March 9, 2004 in

retaliation for his activities as a union representative.  The defendants are:

- Clarkston Community Schools;

- Clarkston Community Schools Board of Education (the Board);

- Clarkston Community Schools District (the District);

- Albert Roberts (Roberts)[1];

- Linda Nestor (Nestor), the Executive Director of Human Resources for
  Clarkston Community Schools;

_____

[1]  It is unclear who Roberts is or what role he played in this matter.

1

• Bruce Beamer (Beamer), the Executive Director of Business and Financial Services for Clarkston Community Schools;

• Kevin Kling (Kling), District Custodial Supervisor;

• Stephen Weiner (Weiner), Head Custodian, second shift, Clarkston Community High School;

• Carl Blem (Blem), Day Shift Custodial Supervisor, Clarkston Community High School;

• Wes Goodman (Goodman), Director of Maintenance Operation for Clarkston Community Schools.

Partlo claims that his termination is in violation of (1) the First Amendment of the Constitution; (2) the Equal Protection Clause of the Fourteenth Amendment; and (3) his rights to Procedural Due Process and liberty interest in his reputation. Partlo asks for compensatory and punitive damages, costs, interest, and attorneys fees.

Before the Court is the defendants' joint motion for summary judgment. The defendants argue that Partlo's case should be dismissed because he is unable to establish any of his constitutional claims without litigating whether he was terminated for his union related activities–an issue that was preclusively determined by the Michigan Employment Relation Commission (MERC). Additionally, the defendants argue that Partlo has not established a dispute on any material facts that could support his constitutional claims; support an attachment of municipal liability to the municipal defendants; and the individual defendant's are entitled to qualified immunity.

For the reasons that follow, the motion is GRANTED.[2]

_____

[2] Because Partlo is unable to proceed with any of his claims, the issues of whether the municipal defendants are liable and whether the individual defendants are entitled to qualified immunity are moot.

2

## II. BACKGROUND

Partlo was employed as a custodian with the Clarkston Community Schools from the fall of 1986 to his termination on March 9, 2004.   At the time of his termination Partlo worked second shift (3:30 p.m. to 12:00 a.m.) at Clarkston Community High School (the High School) under the supervision of Weiner and Blem.

Partlo was an active member of the Clarkston Association of Support Personnel (the Union), which operates under a collective bargaining agreement (the Agreement) with the municipal defendants.  Beginning in 2001, Partlo served as a union representative.  Partlo says that he filed numerous grievances and unfair labor practice charges against his Clarkston Schools on behalf of himself and the union members he represented.  In particular, Partlo was the representative for an employee who was accused of authoring a threatening note and having alcohol on his breath; and for another employee who had allegedly not performed his duties at a craft show.

Partlo says that before his union activity he was written up on only one occasion and he was given satisfactory evaluations.  However, after he became a union representative, he was written up many times and his evaluations worsened.  The defendants say that Partlo was written up more frequently after he became a union representative because he became increasingly disrespectful and threatening towards his supervisors.  In particular, in the 18[3] months before he was terminated Partlo was written up on two occasions for conversations he had with his supervisors.  On August

---

[3]  The Agreement states that  "in imposing any discipline on a current charge, the employer will not take into account any prior infractions which occurred more than eighteen (18) working months previously."  Article VIII(B).

3

6, 2002, Partlo was given a written warning from Goodman concerning reports of "disruptive and insubordinate" behavior from Kling.  The warning stated that Partlo was in Stage 1 of disciplinary proceedings under the agreement.  On January 9, 2004, Blem and Weiner wrote up Partlo for directing profanities at Blem.  This warning also stated that Partlo was in Stage 1 of disciplinary proceedings under the agreement.

On the evening of March 1, 2004, parent-teacher conferences were being held at the high school.  Normally 6 custodians worked this shift, but on this particular evening, only 3 custodians were present.  Partlo was one of these custodians; he began work at 3:30 pm.  He and another custodian, Diana Webb (Webb), began to jointly clean their pre-assigned areas.  Blem also told Partlo and Webb to clean the areas of two of the absent custodians.

At approximately 5:00 p.m., Weiner paged the custodial staff to meet in the high school office.  Weiner says he needed the custodians to clean the "heavy traffic areas" in preparation for the parent-teacher conferences.  Partlo and Webb did not respond to the page, and Weiner issued a second general page.  Again, Partlo and Webb did not report to the office.  Weiner paged Partlo and Webb for a third time, this time asking for them specifically.  Partlo and Webb arrived about 5 to 10 minutes later[4] and Weiner asked them to clean and mop some hallways, and asked Partlo to check the boys "gang"/multi-stalled bathroom.  Partlo told Weiner that he was concerned about mopping the hallways at that time because it would be heavily trafficked and someone

---

[4]  Partlo explains that he did not immediately respond because he was locking up his cleaning supplies in accordance with school regulations.  It is unclear whether he explained this to Weiner.

4

attending parent-teacher conferences could slip and fall.  Weiner responded to the effect that he had not thought of that possibility.  Partlo interpreted this response to mean that Weiner concurred with his recommendation that he should mop the hallway after the parents had left.

Partlo says that after his conversation with Weiner, he checked the gang bathroom, which he concluded looked presentable.  Partlo and Webb then went outside and took a  break.  Partlo and Webb smoked cigarettes during this break which is against school regulations.  Kling saw Partlo and Webb taking a break and called Weiner who approached Partlo and Webb and asked them why they were not working. The conversation became heated.  Weiner says that both Partlo and Webb directed profanities at him.  In particular, Weiner says that Partlo called him a "dickhead" twice. Partlo and Webb also told Weiner they were punching out and going home because they were ill.  Weiner says he told them to stay and that walking off the job was insubordination.  Partlo and Webb left work and went to see their union president Nikki Roy (Roy).  Partlo and Webb talked to Roy for approximately an hour and then went to a walk-in clinic used by the District where they saw the same doctor. They were both diagnosed with anxiety and/or high blood pressure and given work excuse slips recommending that they take three days off work.  On March 2, 2004, Beamer and Nester began investigating the events on March 2, 2004.[5]  Beamer and Nester interviewed Kling, Weiner, Partlo, Webb, and also various unnamed secretaries and administrators.

---

[5] It is unclear who directed Beamer and Nestor to begin the investigation.

A disciplinary hearing was held on March 5, 2004.  Partlo refused to participate in the hearing.  Instead, Roy spoke on Partlo's behalf and insisted that Partlo simply went home sick on the night of March 1, 2004.  Beamer stated that he believed that there was more to the incident and that the parties should meet again to discuss disciplinary action.  Beamer then suspended Partlo with pay until the second disciplinary meeting.

A second disciplinary hearing was held on March 8, 2004.  Partlo attended this meeting and Beamer explained to him that the hearing was to "clarify cause for insubordination, and have [him] give [his] side."  Partlo denied using vulgar language and smoking on school property, but admitted to hearing the first two pages and hearing Weiner give him instructions to spot-mop the hallway and clean the boys' gang bathroom.  At the end of the hearing, Beamer and Nestor suspended Partlo without pay. They also discussed the information they had gathered from the interviews and  the two disciplinary hearings, and determinated that they had just cause to terminate Partlo.

A third disciplinary hearing was held on March 9, 2004.  Partlo was represented by counsel.  At this hearing Beamer gave Partlo a termination letter stating that he was being terminated as the result of "an investigation of insubordinate action and inappropriate behaviors."  In particular, the letter stated that "the seriousness of the insubordination offense and [his] continued disrespect of management alone, warrant a decision to terminate."  The letter also included a list of 18 just causes for termination, as required by the agreement.  Some of these causes included: insubordination; failure to respond to intercom page from office; failure to return to work after being directed; using threatening words towards a supervisor; using profanity with supervisor; smoking on school grounds; and failure to receive approval to leave early.

6

On March 11, 2004, Partlo filed a grievance with an immediate supervisor pursuant to the agreement.  Partlo alleged that there was no just cause for his termination and that the District discharged him in retaliation for his union activity.  As required by the agreement, the District Superintendent conducted a hearing.  The Superintendent subsequently denied Partlo's grievance.

On March 29, 2004, Partlo's union filed for arbitration with Clarkston Community Schools.  Arbitration hearings were held on September 8, 2004, October 22, 2004, and January 17, 2005.  At the hearing both Partlo and the district were represented by counsel, were able to make opening statements; call, examine and cross examine witnesses who were sworn; submit relevant documents on the issues, and file post-hearing briefs.  Partlo presented evidence that the relationship between the District and the second shift custodians at the high school was acrimonious.  However, on May 12, 2005, the arbitrator denied Partlo's grievance upon concluding that Partlo was not terminated for his union-related activities:

> While some of the District's allegations individually [such as smoking on school property] do not rise to "just cause," Partlo's leaving his job without permission and without an emergency, his using vulgarity in talking to his supervisor, and his failure to carry out those normal custodial tasks he was told to do create a situation in which the District did have just cause to discharge Partlo.  There is no evidence of anything arbitrary, capricious, or discriminatory in the District's action.

On May 11, 2004, the union filed a charge with MERC against the Clarkston Community Schools.  The union claimed that the District violated the Public Employment Relations Act (PERA) which prohibits unfair labor practices by terminating

him because of his union activities.  M.C.L. §§ 423.210[6] and 423.216.  Partlo's case

was heard by an administrative law judge (ALJ) on December 19, 2005.  Both parties

were represented by counsel, were allowed to give testimony, present evidence, and file

post-hearing briefs.  On July 7, 2006, the ALJ recommended the dismissal of  Partlo's

claim, concluding that although there was evidence that the Clarkston Schools had

become hostile towards Partlo for his union-related activities, Partlo's termination   was

the result of his insubordination, and was not motivated by his union activities.  MERC

adopted the findings of the ALJ on September, 12, 2006 and dismissed Partlo's claim.

Partlo did not seek judicial review of the MERC decision.

Partlo filed this case on March 9, 2006.

### III.  SUMMARY JUDGMENT

Summary judgment is appropriate when the "pleadings, depositions, answers to

interrogatories, and admission on file, together with the affidavits, if any show that there

is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  There is no genuine issue of

material fact when "the record taken as a whole could not lead a rational trier of fact to

---

[6] The ALJ explained the relevant PERA law as follows:
To establish a prima facie case of discrimination under Section 10(1)(c) of PERA,
the charging party must who: (1) employee union activity; (2) the employer's knowledge
of that activity; (3) the employer's union animus or hostility to the employee's protected
rights; and (4) suspicious timing or other evidence that the protected activity was a
motivating cause of the employer's actions.  Warren Con Schs 18 MPER 63
(2005)[additional citations omitted]. The record must contain sufficient evidence to
support an inference of discriminatory motivation.  Saginaw Bay Human Services, Inc.,
1995 MERC Lab Op 131, 136-137.  If the charging party established a prima facie case
of discrimination, the respondent has the burden of demonstrating that the same action
would have taken place even in the absence of protected conduct.

find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving

party's response "must set forth specific facts showing that there is a genuine issue for

trial." FED. R. CIV. P. 56(e).  Showing that there is some metaphysical doubt as to the

material facts is not enough; "the mere existence of a scintilla of evidence" in support of

the nonmoving party is not sufficient to show a genuine issue of material fact.  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must

present "significant probative evidence" in support of its opposition to the motion for

summary judgment in order to defeat the motion.  See Moore v. Philip Morris Co., 8

F.3d 335, 340 (6th Cir. 1993); Anderson, 477 U.S. at 249-50.  Additionally, and

significantly, "affidavits containing mere conclusions have no probative value" in

summary judgment proceedings.  Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir.

1968).

The Court must decide "whether the evidence presents a sufficient disagreement

to require submission to a [trier of fact] or whether it is so one-sided that one party must

prevail as a matter of law."  In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994)

(quoting Anderson, 477 U.S. at 251-52).  The Court "must view the evidence in the light

most favorable to the non-moving party."  Employers Ins. of Wausau v. Petroleum

Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).  Determining credibility, weighing

evidence, and drawing reasonable inferences are left to the trier of fact.  See Anderson,

477 U.S. at 255.  Only where there are no genuine issues of material fact and the

moving party is entitled to judgment as a matter of law may summary judgment be

granted.  Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

## IV.  DISCUSSION

### A.  Whether Partlo's Claims are Collaterally Estopped

### 1.  The Standard

In Davet v. City of Cleveland, 456 F.3d 549, 552-553 (6th Cir. 2006) The Sixth

Circuit Court of Appeals held that:

> when a state agency acting in a judicial capacity resolved disputed issues of fact
> properly before it which the parties have had an adequate opportunity to litigate,
> federal courts must give the agency's factfinding the same preclusive effect it
> would be entitled to in the State's court.

Michigan recognizes the doctrine of collateral estoppel as barring the relitigation

of conclusions reached in previous actions, Roman Cleanser Co. v. Murphy, 386 Mich.

698, 703-704 (1972).  The doctrine of collateral estoppel may be invoked when:

> (1) a question of fact essential to the judgment must have been actually litigated
> and determined by a valid and final judgment;
> (2) the same parties must have had a full opportunity to litigate the issue, and
> (3) there must be mutuality of estoppel (i.e. both parties are bound by the
> decision).

Nummer v. Treasury Dep't., 448 Mich. 534, 541 (1995).

With respect to administrative decisions, Michigan courts give preclusive effect to

certain administrative decisions, including MERC decisions where in additional to the

factors listed from above:

> (4) the administrative determination was adjudicatory in nature
> (5) the decision provided a right to appeal; and
> (6) the Legislature intended to make the decision final absent an appeal.

Nummer, 448 Mich at 542 (citing Senior Accountants, Analysts & Appraisers Ass'n. v.
City of Detroit, 399 Mich. 449, 457-458 (1976)).

10

## 2. Arguments

The defendants argue that Partlo's complaint must be dismissed under collateral estoppel because all his claims are premised on a core factual allegation –that he was terminated for his union activities – which has already been litigated and rejected by the MERC. The MERC found that Partlo was terminated for insubordination. Moreover, the defendants point out that both parties have had a full opportunity to litigate the issue of whether Partlo was terminated for his union activity through the MERC hearing, and the MERC decision is equally binding on both parties. Therefore, the doctrine of collateral estoppel applies because the three requirements set forth in Nummer have been met.

The defendants further argue that the additional requirements set forth in Nummer dealing specifically with whether collateral estoppel applies to administrative proceedings have also been met. The defendants rely on the facts in Nummer, 448 Mich. at 542-43. in which the court found an administrative proceeding by the Civil Service Commission to be adjudicatory in nature because the parties were represented by counsel, there was an opportunity to call witnesses, and there was a full hearing on the merits. Here, the defendants argue that the MERC proceedings was also adjudicatory in nature because both parties were represented by counsel, could present evidence, and could call and examine and cross-examine witnesses. The defendants also point out that Partlo could appeal the MERC decision under M.C.L. § 432.216. Finally, defendants argue that the legislature intended for a MERC decision to be final absent an appeal, because PERA does not create or contemplate a new, original action in another court where a claimant chooses not to appeal a decision by the MERC.

11

M.C.L. § 432.216(e),  Senior Accountants, 399 Mich. at 458-459.

Partlo responds that his claims are not not barred by the MERC decision because he has alleged various violations of federal constitutional rights that MERC does not have jurisdiction to hear under PERA.  Partlo explains that while the MERC has exclusive jurisdiction and administrative expertise to entertain and reconcile allegations of unfair labor practices and misconduct under PERA, it does not have jurisdiction to hear federal constitutional claims. Therefore, he is not collaterally estopped from bringing forth these claims because the MERC did not have jurisdiction to even hear the constitutional claims in this matter.

Partlo further argues that this case is distinguishable from Senior Accountants, the principle case upon which the defendants rely.  In Senior Accountants, the Mayor of the Detroit ordered city employees to increase their work schedules from 35 to 40 hours per week.  The employees brought an unfair labor practice complaint to the MERC and asked for backpay for the extra 5 hours.  The MERC ordered Detroit to rescind the action but denied the employees claim for back pay for the extra 5 hours.  The employees then brought an action for breach of contract in the Wayne County Circuit Court requesting as damages the back bay for the extra five hours worked.  The court reasoned that the MERC's determination that the employees were not entitled to back pay for the unfair labor practice charge operated as collateral estoppel to the subsequent circuit court action which sought to recover the same reimbursement as the damages for breach of contract.  Partlo argues that this case is different because he has requested money damages for violations of constitutional rights, a remedy not available under the PERA.

12

The defendants respond that although Partlo is correct that the MERC could not have adjudicated any constitutional claims, that is irrelevant to the collateral estoppel analysis, which is concerned only with whether a question of fact essential to the MERC decision was actually litigated, and whether a party is attempting to relitigate that same question of fact in a subsequent proceeding.

### 3.  Resolution

Partlo's argument that <u>Senior Accountants</u> is not applicable here is based on a misunderstanding of the case's central holding.  In <u>Senior Accountants</u> the issue was not whether the plaintiff's had sought the same compensatory relief in the MERC hearing and subsequently in the circuit court case.  The issue was whether the ALJ had already determined that the employees were not entitled to back pay.  Collateral estoppel operates when an issue of material fact or law has already been litigated, not whether the plaintiff has sought the same compensation.

Insofar as Partlo's claims require the Court or a jury to decide whether he was terminated in retaliation for his union activities, they are barred by collateral estoppel. Federal courts give the same preclusive effect to decisions of state agencies as would the courts of that state.  <u>Davet</u>.  Partlo fully litigated the issue of whether he was terminated because of his union activity in the MERC proceeding. To succeed with his First Amendment, Equal Protection, and Procedural Due Process claims, Partlo would need show that his union activity was a motivating factor in the defendant's decision to terminate him.  The Court will give preclusive effect to MERC's decision that Partlo was not terminated for his union-related activities.  Therefore Partlo's claims are estopped, as is discussed below.

### B.  Freedom of Speech

### 1.  The Standard

To succeed in his First Amendment retaliation claim under Section1983, Partlo must prove that (1) he engaged in "constitutionally protected speech"' (2) he was subjected to an adverse employment action; and (3) his protected speech was a "substantial" or "motivating" factor in the adverse action.  Farhat v. Jopke, 370 F.3d 580, 588 (6th Cir. 2004).

Whether a plaintiff's speech addressed a matter of public concern is a question of law.  Barnes v. McDowell, 848 F.2d 725, 733 (6th Cir. 1988).  Constitutionally protected speech is speech that relates to a "matter of political, social, or other concern to the community."  City of San Diego v. Roe, 543 U.S. 77, 80 (2004). The Sixth Circuit Court of Appeals explains that speech related to a matter of public concern if it involved "issues about which information is needed or appropriate to enable members of society to make informed decisions about the operation of their government." Bradenburg v. Housing Authority of Irvine, 253 F.3d 891, 898 (6th Cir. 2001).  In contrast, the First Amendment does not protect a public employee's speech relating to "matters of only personal interest."  Connick v. Meyers, 461 U.S. 138, 147 (1983).

The Sixth Circuit also inquires as to whether the "focus",  "point", or "purpose" of the speech is to a matter of public concern.  Farhat, 370 F.3d at 592.  A "passing or fleeting reference to an arguably public matter do[es] not elevate the speech to a matter of public concern where the focus or point of the speech advances only a private interest."  Id. at 592-593.

### 2. Arguments

14

The defendants argue that Partlo's claim should be dismissed because his union-related speech did not address a matter of public concern.  In Boals v. Gray, 775 F. 2d 686, 693 (6th Cir. 1985), the Court of Appeals rejected the argument that union-related speech addresses a matter of public concern per se.  The court held that absent some evidence that the employer harbors an anti-union animus, "an employee's speech, activity, or association, merely because it is union-related,  does not touch on a matter of public concern as a matter of law."  Id.  In Boals, the plaintiff had recently become a union member when he found a parking ticket on his car.  He was suspended after he told another employee to take the ticket to his supervisor and to tell him to "stick it up his ass."  The plaintiff alleged that he had been suspended in retaliation for his union activity.  The court disagreed because there was no evidence to suggest that the employer possessed an anti-union animus.  Id. at 694.  Instead, the court found that the events in question involved internal discipline and not a matter of pubic concern.

The defendants argue that this case is similar to Boals.  While they aver that as a union representative, Partlo did represent at least two union members in disciplinary proceedings and brought several grievances on his own behalf, they argue that this speech related to only internal personal disputes and Partlo's complaints about his employer's actions.  Therefore, Partlo's speech was in no way necessary to enable members of the public to make informed decisions about the operation of their government.

In his complaint, Partlo also alleges that he spoke out about the municipal defendants' inappropriate use of public monies.  The defendants argue that Partlo has

15

failed to articulate any factual allegations indicating that any such remarks raised his speech to the level of his having addressed a matter of public concern. Therefore, any speech would have been incidental at best, more likened to a work place gripe than to any public concern. Farhat, 370 F.3d at 593.

Next, the defendants argue that Partlo cannot make out a First Amendment relation claim because he has offered no evidence that his union-related speech was a motivating factor in the defendants' decision to terminate him, and this issue has been preclusively determined by the MERC decision in the defendants' favor. The defendants maintain that Partlo's termination reflects a legitimate effort to deal with his insubordinate behavior and verbal confrontation with Weiner, and had nothing to do with his union activity. At any rate, the defendants point out say that even if Partlo can establish a prima facie case of retaliation, Partlo's claim must be dismissed because the defendants had just cause to termination him for insubordination despite his speech. See Langford v. Lane, 921 F.2d 677 (6th Cir. 1991) (finding that plaintiff had not established a first amendment claim where the employer presented ample evidence to show that eh plaintiff would have ben fired for insubordination even if she had not engaged in the protected speech.)

Partlo responds by asserting that he was very active and zealous representative and restating his union activities on behalf of other union members. He appears to argue that his general advocacy as a union representative is sufficient to give rise to a protectable First Amendment interest.

### 3. Resolution

16

Partlo's First Amendment claim must be dismissed because the MERC preclusively established that his union-related speech was not a "substantial" or "motivating" factor in his termination.

Moreover, Partlo's claim must also be dismissed because he has not established that his union-related speech addressed a matter of public concern.  Partlo's speech on behalf of fellow union members appears to have been solely in the context of the disciplinary hearings concerning those particular union members.  Such speech advances only private interests, and is not protected by the First Amendment.  See Farhat.  Additionally, although Partlo alleges that he complained about the municipal defendants' inappropriate use of public monies, he does not articulate any specific factual allegations to establish that he addressed a matter of public concern.

### C.  Procedural Due Process

#### 1. The Standard

The Due Process clause of the Fourteenth Amendment provides that "no State shall … deprive any person of life, liberty, or property, without due process of law …" U.S. CONST. amend. XIV.  When considering claims of the violation of due process rights, a court should undertake a two-step analysis.  The first step is to determine whether the plaintiff has a liberty or property interest entitled to due process protection. Bd. of Curators of Univ. of Missouri v. Harorwitz, 435 U.S. 78, 82 (1978).  Here, it is undisputed that Partlo had a continued interest in continued government employment. Moreover, under the agreement, Partlo was entitled to be terminate only for "just cause."

The second step in the analysis is to determine what process is due.  Due

17

process means that the plaintiff has been given sufficient notice and the opportunity to be heard "at a meaningful time and in a meaningful manner."  Matthews v. Eldridge, 424 U.S. 319, 333 (1976).

### 2.  Arguments

#### a.

Partlo argues that the defendants violated his procedural due process rights by failing to follow the disciplinary steps set forth in the agreement.  In particular he says that only the Board was allowed to terminate him, and he was never given a hearing in front of the Board.  Partlo also says that the defendants did not follow a graduated four-stage disciplinary process and instead immediately terminated him for the incident on March 1, 2004.

The defendants respond that Partlo was afforded adequate procedural due process when he was apprised of the charges against him and given two pre-termination hearings, and afforded multiple post-termination hearings through the grievance hearing conducted by the District Superintendent, the hearing before the neutral arbitrator, and then the MERC hearing before the ALJ.

The defendants also argue that the agreement does not state that only the Board can terminate union members.  Instead, the agreement specifies that the District's policies apply, and those policies clearly allow the Superintendent to delegate the investigation and decision to terminate an employee to administrative staff.

Alternatively, the defendants point out that even if an employer deviates from its contractual termination proceeding, so long as it provides notice and some pre-termination opportunity to be heard, it will have still met its due process requirements

18

under the constitution.  See e.g. Buckner v. City of Highland Park, 901 F.2d 491 (6th Cir. 1990).

**b.**

Next, Partlo argues that his liberty interest in his reputation has been violated because he was never given a name-clearing hearing after he was terminated.  Partlo alleges that the defendants "defamed" him through negative employment evaluations which have damaged his reputation and consequently his ability to pursue other employment opportunities.

The defendants respond that Partlo's claim is mertiless. The defendants rely on Ludwig v. Bd. of Trustees, 123 F.3d 404, 410 (6th Cir. 1997), in which the Court of Appeals held that where a plaintiff can show that he had a liberty interest in protecting his reputation, he can show that he was denied due process if he can establish that (1) he requested a name-clearing hearing (2) the employer deprived him of a name clearing hearing or an opportunity to refute the charges against him.  The defendants say that Partlo cannot show that the defendants' deprived him of his liberty interest in his reputation because he never requested a name-clearing hearing.

**3.  Resolution**

Partlo was afforded due process.  He was given numerous opportunities to present his side of the story through the interview with Nestor and Beamer, the two disciplinary hearings, the grievance hearing before the Superintendent, the arbitration hearing, and before the ALJ in the MERC proceeding.

Moreover,  Partlo has not refuted the defendants assertion that the Superintendent was allowed to delegate the decision to terminate him to administrative

19

assistants.  Likewise, Partlo has not specified where the agreement says that the Board must hold a hearing before terminating an employee.

Finally, Partlo cannot establish that his liberty interest in his reputation was violated because he never requested a name-clearing hearing.

### D.  Equal Protection

#### 1. The Standard

The Equal Protection Clause of the Fourteenth Amendment guarantees to each person "the right to be free of invidious discrimination."  Harris v. McRae, 448 U.S. 297, 322 (1980).  Partlo has asserted his equal protection claim under a "class of one" theory.   To present a claim as a "class of one," a plaintiff must demonstrate that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  A class of one claim differs from a more traditional equal protection claim because a class of one theory is based on disparate treatment directed at an individual, not at a group.  Id.  Although the circuits are split as to whether class of one claims should be allowed in the employment context, The Sixth Circuit has recognized "class of one" claims so long as they are sufficiently specific in identifying similarly situated individuals who received different treatment. Bower v. Vill, of Mt. Sterling, 2002 WL 1752270 (6th Cir. July 26, 2002); see also, Klimik v. Kent County Sheriff's Dept., 91 Fed. Appx. 396 (6th Cir. 2004).

Once a plaintiff has identified the similarly situated individuals, plaintiff must also (1) refute every conceivable basis that might support the government action; or (2) demonstrate that the challenged action was motivated by animus or ill will.  Bower,  WL

20

1752270 at *4.

### 2.  Arguments

The defendants argue that Partlo's cannot establish a prima facie case under a class of one theory because there is no evidence that he was treated differently from other similarly situated employees.  To the contrary, Diana Webb, the janitor Partlo was cleaning with on March 1, 2004, is not a union representative, and she was also terminated for insubordination after refusing to follow direct orders, directing vulgarites at Weiner, and walking off the job without permission.  Therefore, defendants say, there was no disparity in the treatment of Partlo.

The defendants also argue that even if Partlo could prove that he was treated differently that a similarly situated employee, he is still unable to prove a class of one claim because there was a rational basis for his termination.  As preclusively determined by the arbitrator and the MERC, the decision to terminate Partlo was based solely on Partlo's insubordinate actions.

Partlo responds that he was treated differently than janitors who were unable to finish their work, who had arguments with their supervisors, and who had used profanities against their supervisors, and were not fired.  He asserts that he was fired because of his union activity.  Partlo also claims that the defendants wanted to terminate Webb because she too was a union member and brought many grievances.

### 3.  Resolution

Even if Partlo was treated differently than similarly situated employees, he has not refuted every conceivable basis the defendants offer to explain their decision to terminate him, nor has he shown his termination was motivated by ill-will or animus

21

towards his union-related activities.  As established by the MERC decision, the
defendants did not terminated Partlo for his union-related activities.  They terminated
him for his insubordination in not answering Weiner's page the first two times, not
following Weiner's direction to clean the boys bathroom and mop the hallways; using
profanity against his Weiner; and walking off the job without permission.

### E.  Discovery

### 1. The Standard

Summary judgement is not proper if the non-movant has not been afforded a
sufficient opportunity for discovery.  Vance v. United States, 90 F.3d 1145, 1148 (6th
Cir. 1996).

### 2. Arguments

 Partlo says that on June 1, 2006 the Court issued a scheduling order whereby
discovery was to be completed in four months.  Partlo says because of the short period
of discovery, he is unable to take depositions and conduct further discovery, and
therefore summary judgment is premature.

The defendants respond that Partlo has failed to meet his burden under Fed. R.
Civ. P. 56(f) because he has not offered an affidavit detailing what additional discovery
he needs and how it would enable him to demonstrate the existence of a genuine issue
of material fact.  Wallin v. Norman, 317 F.3d 558, 564 (6th Cir. 2003).  The defendants
also point out that since he filed the case six months ago, Partlo has issued only one set
of written discovery requests which were timely answered and has taken the deposition
of several witnesses.

**3 . Resolution**

Partlo has failed to properly assert a need for additional discovery through attaching an affidavit detailing what additional discovery he needs and how it would demonstrate the existence of a genuine issue of fact.  Therefore, Partlo has failed to assert a basis for why the defendant's motion is premature.

**V.  CONCLUSION**

Partlo has already received two "bites of the apple" – first through arbitration, and second through the MERC proceeding.  Partlo is not entitled to a third bite in the guise of a Section 1983 claim.  The defendants' joint motion for summary judgment is GRANTED.  The case is DISMISSED.

**SO ORDERED.**


Dated:  January 26, 2007            _s/Avern Cohn_____
                                    AVERN COHN
                                    UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, January 26, 2007, by electronic and/or ordinary mail.

                                    _s/Julie Owens_____
                                    Case Manager, (313) 234-5160

23